## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY URBASSIK, | ) | Case No. 1:21-cv-01974 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

On behalf of himself and a putative class of those similarly situated, Plaintiff Jeremy Urbassik brings this action, alleging that Defendant American Family Mutual Insurance Company failed to pay actual cash value as required under his auto-insurance policy after an accident rendered his vehicle a total loss. In his second amended class action complaint, Plaintiff sues for breach of contract and breach of the covenant of good faith and fair dealing. (ECF No. 36.) Also, he seeks a declaratory judgment that Defendant's valuation process breaches the policy and violates Ohio law. (*Id.*) Defendant moves to dismiss the complaint in its entirety. (ECF No. 37.) For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## STATEMENT OF FACTS

Taking the facts Plaintiff alleges in the second amended complaint as true and construing them in his favor, as the Court must in the present procedural posture, Plaintiff bases his claims on the following facts.

### A.    Plaintiff's Total Loss Vehicle

Mr. Urbassik's 2006 Chrysler 300 suffered a total loss around June 26, 2017. (ECF No. 36, ¶ 27, PageID #452.)  He had auto insurance through American Family under an agreement effective April 4, 2017 to October 4, 2017.  (ECF No. 36-1, PageID #466.)  Mr. Urbassik submitted a claim under the policy for the damage to his vehicle. (ECF No. 36, ¶ 28, PageID #452.)

American Family determined that the vehicle was a total loss and offered to pay Mr. Urbassik $6,853.00.  (*Id.*, ¶ 30, PageID #453; ECF No. 36-2, PageID #496.) To estimate the value of Mr. Urbassik's vehicle, and consistent with Ohio law, American Family used a third-party service called AudaExplore, which averages the prices of comparable vehicles in his area.  (ECF No. 36, ¶¶ 14, 29 & 30, PageID #449 & #453.)  AudaExplore used a sample of 32 comparable vehicles.  (*Id.*, ¶ 30, PageID #453; ECF No. 36-3, PageID #499.)  American Family provided Mr. Urbassik with a report from AudaExplore that included a sample of five of these vehicles, their location and condition information, and the "typical negotiation adjustment" AudaExplore imposed on the comparable vehicle's list price.  (ECF No. 36-3, PageID #500–01.)  American Family applied a downward adjustment of $614.17 to the market value of Mr. Urbassik's car to reflect this average nine percent negotiation or "selling price" adjustment.  (ECF No. 36, ¶ 31, PageID #453.)  Plaintiff contends that this across-the-board selling-price adjustment bears no relationship to actual prices determined in the market.  (*Id.*, ¶¶ 20 & 21, PageID #451.)

AudaExplore adjusted the value of Mr. Urbassik's vehicle based on its odometer reading and the condition of its carpets, headliner, and paint.  (ECF No. 36-

2

3, PageID #499.)  AudaExplore made upward adjustments to Mr. Urbassik's vehicle based on its mileage, carpet wear, and paint wear, and a downward adjustment of $35 for its headliner wear.  (*Id.*)  Plaintiff alleges that the $6,853.00 that American Family paid him undervalued his vehicle by at least $614.17, which is the amount of the selling price adjustment.  (ECF No. 36, ¶ 33, PageID #453.)  Mr. Urbassik did not dispute the payment of $6,853.00 until he filed suit on October 19, 2021.  (*Id.*, ¶ 34, PageID #453.)

### B.    Appraisal under the Policy

Under the policy, if the insured disputes American Family's initial offer to settle a claim, he may demand an appraisal.  (ECF No. 36-1, PageID #477.)  Also, American Family has the right to demand an appraisal.  (*Id.*)  The policy provides that, if either party demands an appraisal, each will hire an appraiser at their own expense, and split the other costs of the appraisal equally.  (*Id.*)  Plaintiff alleges that Defendant intentionally applies the selling price adjustment to total loss vehicles and requires the insured to pay for their own appraiser to deter insureds from demanding an appraisal.  (ECF No. 36, ¶ 26, PageID #452.)  Then, American Family recovers the difference between the actual cash value before the adjustment and the adjusted value.  (*Id.*)  Plaintiff alleges this process "systematically undervalues total-loss vehicles" to reduce the amount Defendant ultimately pays out to insured individuals. (*Id.*, ¶ 1, PageID #446.)

3

C.      **Relevant Policy Language**

American Family's automotive policy provides collision and comprehensive coverage for physical damage resulting in the total loss of an insured's vehicle. The following policy language is relevant to Plaintiff's allegations:

DEFINITIONS

> 2. **Loss** means direct and accidental damage to or theft of your covered car. Loss does not mean any difference in the market value of your covered car immediately prior to the loss; and the market value of your covered car after repairs from the loss are completed.

(ECF No. 36-1, PageID #475.)

INSURING AGREEMENT

Collision Coverage

> 2. We will pay for loss due to the collision of your covered car with another object, or upset of your covered car.

(*Id.*, PageID #476.)

Limits of Liability

> 1.  . . . our limit of liability for loss will not exceed the lesser of:
>
>> a.   the actual cash value of the stolen or damaged covered property; or
>>
>> b.   the amount necessary to repair or replace the stolen or damaged covered property.
>
> . . .
>
> 5.  An adjustment for depreciation and physical condition will be made in determining actual cash value.

(*Id.*, PageID #477.)

Payment of Loss

> 2.  You or we may demand appraisal of the loss.  Each will appoint and pay a competent and impartial appraiser and will equally share other appraisal expenses.  Each appraiser will state separately the actual cash value and the amount of loss.  An award in writing by any two appraisers will determine the amount payable.  The appraisers, or a judge of a court having jurisdiction, will select an umpire to decide any differences.

(*Id.*)

### D.    Procedural History and Appraisal

On December 16, 2021, Defendant moved to dismiss Plaintiff's claims or, alternatively, to compel appraisal under the policy.  (ECF No. 14.)  After Plaintiff amended (ECF No. 22), Defendant renewed the motion on February 7, 2022 (ECF No. 30).  In March 2022, Plaintiff agreed to participate in the appraisal process.  (ECF No. 36, ¶ 35, PageID #454.)  Plaintiff paid his appraiser $349.  (*Id.*, ¶ 37, PageID #454.)  Plaintiff's appraiser and Defendant's appraiser found different actual cash values for Plaintiff's vehicle.  (*Id.*, ¶ 43, PageID #455.)  Defendant's appraiser determined an actual cash value of $5,974.22, and Plaintiff's set it at $7,500.  (*Id.*, ¶¶ 41 & 42, PageID #455.)

The parties submitted the appraisal to a third-party umpire to resolve the dispute as contemplated under the policy.  (*Id.*, ¶ 44, PageID # 455.)  Plaintiff's portion of the umpire's fee was $200.  (*Id.*, ¶ 44, PageID #455.)  The umpire determined that the actual cash value of Plaintiff's vehicle was $8,793.91.  (*Id.*, ¶ 45, PageID #455; ECF No. 36-6, PageID #532.)  Plaintiff does not allege that Defendant failed to pay him the difference between that amount and the original 2017 payment.

These allegations show that Plaintiff paid $549 in costs for the appraisal, which resulted in a determination that his vehicle had an actual cash value of $8,793.91—which is $1,940.91 greater than the $6,853.00 American Family initially offered, and $1,326.74 greater than the $7,467.17 value before application of the discount (nine percent in the case of Mr. Urbassik) about which Plaintiff complains. Further, the umpire determined an actual cash value $1,293.91 higher than Plaintiff's appraiser.

On August 30, 2023, Plaintiff amended to include allegations concerning the appraisal process. (ECF No. 36.)  Then, Defendant moved to dismiss.  (ECF No. 37.)

## STATEMENT OF THE CASE

Plaintiff filed suit alleging that Defendant American Family breached the terms of its insurance policy by applying a downward selling price adjustment of nine percent to its initial calculation of the actual cash value of Plaintiff's vehicle (First Cause of Action) and violated its implied duty of good faith and fair dealing by exercising improper discretion and arbitrarily applying the selling price adjustment (Second Cause of Action).  Also, Plaintiff seeks a declaratory judgment that Defendant's actions breached the insurance contract and violated Ohio law (Third Cause of Action).  Plaintiff asserts these claims individually and on behalf of a putative class of other American Family policyholders.  (ECF No. 36, ¶¶ 47–54, PageID #456–58.)

## ANALYSIS

To withstand a motion to dismiss, Plaintiff must allege facts that "state a claim to relief that is plausible on its face" and raise their "right to relief above the speculative level." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).  But a complaint must offer more than "labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotations omitted).  Rule 8, along with *Twombly* and *Iqbal*, require a plaintiff to "plead enough factual matter to raise a plausible inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (cleaned up).  This inference "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Id.* (citations omitted).  To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible" liability. *Twombly*, 550 U.S. at 553, 555.

7

Neither party disputes that Ohio contract law applies to Plaintiff's claims. The insurance contract's choice of law provision provides that the law of the State of Mr. Urbassik's residence listed on the declarations page governs. (ECF No. 36-1, PageID #480.) Mr. Urbassik's residence is redacted, (*id.*, PageID #466), but he represents, and Defendant does not dispute, that he resides in Ohio. (ECF No. 36, ¶ 8, PageID #448). Where, as here, "'neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.'" *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)). Therefore, the Court applies Ohio law to Plaintiff's claims.

## I. Breach of Contract

Plaintiff's first cause of action alleges that Defendant breached its insurance contract by paying Mr. Urbassik less than the actual cash value of his vehicle in 2017. (ECF No. 36, ¶¶ 55–65, PageID #458–60.) Under Ohio law, "[t]o establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 2018-Ohio-2602, 104 N.E.3d 1076, ¶ 28 (Ohio Ct. App.)).

### I.A. Language of the Policy and Alleged Breach

Plaintiff argues that Defendant breached its insurance contract with him in 2017 by applying an adjustment to the actual cash value of his total loss claim,

purportedly to account for negotiations in typical vehicle sales. (ECF No. 36, ¶¶ 16 & 62, PageID #450 & 459; ECF No. 39, PageID #600.) Defendant argues it did not breach the policy because it paid Plaintiff the amount payable as determined by the appraisal process, and that was its only obligation. (ECF No. 37-1, PageID #558.) Under Defendant's theory, Plaintiff argues that he can establish his breach of contract claim because Defendant owes him additional damages to cure the 2017 breach, specifically prejudgment interest and reimbursement of appraisal and litigation costs. (ECF No. 39, PageID #600–01 & 608–09.)

Whether Defendant breached the insurance contract depends on the language of the policy. Under the policy, in the event of a total loss American Family must pay the actual cash value of Plaintiff's vehicle or the amount necessary to repair or replace the stolen or damaged covered property, whichever is less. (ECF No. 36-1, PageID #477.) The policy does not define actual cash value. (*Id.*) Recently, the Sixth Circuit addressed the definition of actual cash value in the American Family's policy. In *Wilkerson v. American Family Insurance Co.*, 997 F.3d 666 (6th Cir. 2021) (2–1 decision), the plaintiff sought to recover sales taxes and fees as part of the actual cash value of her totaled car, which American Family insured. *Id.* at 667. Because the term "actual cash value" has "developed a technical usage" and is a "term of art in this insurance context," the court determined as a matter of Ohio law that the phrase has evolved to have two meanings—fair market value *or* replacement cost minus normal depreciation. *Id.* at 669–70.

9

Like Mr. Urbassik's policy, the policy in *Wilkerson* did not define actual cash value. *Id.* at 670. Also, it included a provision in its "Limits of Liability" section that limits American Family's payment to the lesser of two amounts: (1) "'the actual cash value of the stolen or damaged property' or (2) 'the amount necessary to repair or replace the property.'" *Id.* In *Wilkerson*, the Sixth Circuit read that language, which is identical to the language in Mr. Urbassik's policy with the same insurer, to mean that actual cash value refers to the market value of the damaged car. *Id.* at 671. Generally, the definition of market value resembles the definition of value—"the price that a seller is willing to accept and a buyer is willing to pay on the open market in an arm's length transaction." *Id.* at 669 (quoting Black's Law Dictionary 1785 (10th ed. 2014)). The AudaExplore report calculated the market value of Mr. Urbassik's vehicle and applied a selling price adjustment in doing so. (ECF No. 36-3, PageID #499–500.) Under the Sixth Circuit's reasoning in *Wilkerson*, applying Ohio law, it is not clear at this stage of the proceedings whether American Family breached its insurance contract as alleged by applying a selling price adjustment.

However, Plaintiff's claim fails for a more basic reason. American Family has now paid Mr. Urbassik the amount payable for his total loss vehicle under the contract, as determined by the appraisal process. Therefore, the selling price adjustment about which Plaintiff complains no longer has any bearing on the breach of contract claim or the amount Defendant owes under the policy for Mr. Urbassik's total loss vehicle.

10

### I.A.1. Plaintiff's Authorities

Plaintiff argues that American Family's original 2017 payment breached the contract by applying the selling price adjustment because the payment did not reflect the actual cash value of the vehicle.  To support this argument, Plaintiff cites *Clippinger v. State Farm Mutual Auto Insurance Co.*, No. 2:20-cv-02482, 2021 WL 4887984 (W.D. Tenn. Oct. 19, 2021).  (ECF No. 39, PageID #606–07.)  In *Clippinger*, the insurer applied a five percent negotiation reduction to comparable vehicle list prices to calculate total loss payments to insureds.  2021 WL 4887984, at *1.  The insurance contract at issue in *Clippinger* contained an appraisal process similar to the one in Mr. Urbassik's auto insurance policy, but the plaintiff refused to participate in it.  *Id.* at *2.  The district court denied the insurer's motion for summary judgment because, without an appraisal, genuine disputes of fact remained on the issue of breach of contract.  *Id.* at *14–16.

Plaintiff's reliance on *Clippinger* misses the mark.  Because the plaintiff in *Clippinger* had not participated in an appraisal, "the parties [could] only speculate about whether (1) Defendant failed to pay Plaintiff the actual cash value of her vehicle, (2) Defendant breached the contract, or (3) Defendant's breach injured Plaintiff."  *Id.* at *14.  The *Clippinger* Court compelled appraisal, *id.* at *17, then noted that post-appraisal there was no longer a genuine dispute over the actual cash value of the plaintiff's vehicle.  *Clippinger v. State Farm Mut. Auto Ins. Co.*, No. 2:20-cv-02482, ECF No. 126, Order at 12 (W.D. Tenn. Sept. 26, 2022) (denying the defendant's motion for summary judgment insofar as the plaintiff alleged that the defendant breached the contract by violating Tennessee law).  Mr. Urbassik's case

stands in this same procedural posture. An appraisal determined the amount payable under Mr. Urbassik's insurance contract, and Defendant paid that amount.

Plaintiff also cites *Nichols v. State Farm Mutual Automobile Insurance Co.*, No. 2:22-cv-16, 2022 WL 6671695 (S.D. Ohio Oct. 11, 2022), to argue that appraisal does not resolve this dispute. (ECF No. 39, PageID #607.) The *Nichols* Court determined that the policy at issue there was ambiguous as to whether the insurer could apply a selling price adjustment to its total loss payments. *Nichols*, 2022 WL 6671695, at *3. In that case, however, there had been no appraisal, and the court declined to compel one. *Id.* at *5. Therefore, the amount State Farm paid to Nichols as of the date of the court's opinion included the selling price adjustment. Here, in contrast, the appraisal materially alters the factual and legal issues at this stage of the proceedings.

### I.A.2. Independent Appraisal

Where an appraisal independently determines the amount payable under the policy without regard to the selling price adjustment, the Court does not have occasion to address whether that adjustment breaches the contract. No facts suggest that the appraisal of Mr. Urbassik's vehicle was based on the original price which included the adjustment. Moreover, an independent umpire determined the appraised value of the vehicle, and nothing in the record suggests or even alleges that he did so by reference to the selling price adjustment.

Perhaps, as the Court explored in its first summary judgment opinion in *Clippinger*, applying a typical negotiation adjustment breaches an insurer's obligation to pay actual cash value. *Clippinger*, 2021 WL 4887984, at *15. But this

case no longer presents that issue. Under the policy, the appraisal conclusively determined the amount payable to Mr. Urbassik. The pleadings and the parties' briefs indicate Defendant has now paid that amount.

Plaintiff alleges that the appraisal process constitutes an integral part of American Family's scheme to pay less than actual cash value as the policy requires by forcing insureds to accept an offer of actual cash value, less a selling price adjustment, or incur their share of the costs of an appraisal. (ECF No. 36, ¶ 4, PageID #447.) But the facts as alleged, and construed in Plaintiff's favor, do not bear that claim out. At a total cost of $549, the appraisal determined that Mr. Urbassik's vehicle had an actual cash value $1,940.91 greater than American Family's initial offer, which included the selling price adjustment, well in excess of the costs of the appraisal process itself. Simply put, a scheme that results in paying more than an initial determination of actual cash value, more even than Plaintiff's own appraiser, went badly awry. These facts demonstrate that Plaintiff has not made a showing of entitlement to relief.

For the foregoing reasons, Plaintiff has not pled facts that state a claim for breach of the insurance contract between Mr. Urbassik and American Family.

### I.B.    Other Costs and Damages

Plaintiff argues he is entitled to consequential damages for Defendant's breach, which fall into three buckets: (1) appraisal costs; (2) litigation costs; and (3) prejudgment interest. (ECF No. 39, PageID #600–01 & 608.) He argues that his claim survives because Defendant has not compensated him for these alleged damages. (*Id.*)

13

*Appraisal Costs.*  Even if Plaintiff stated a claim for breach of contract, the plain language of the policy forecloses his request to recover appraisal costs.  Under the policy, if a party demands appraisal, then each bears the costs of his or its own selected appraiser.  (ECF No. 36-1, PageID #477.)  If the two appraisers cannot agree on an amount payable for the loss, the parties share the cost of a third appraiser or umpire.  (*Id.*)  That is what transpired here.  (ECF No. 36, ¶ 37, PageID #454.)  Nothing in the policy or the law authorizes shifting these costs.

*Litigation Costs.*  Plaintiff cannot recover litigation costs either.  Ohio follows the American rule, and parties bear their own costs in litigation absent a statutory or contractual obligation to the contrary.  *Abbe Rd. Realty, LLC v. Kuehne & Nagel, Inc.*, No. 1:14-CV-2463, 2017 WL 10858881, at *12 (N.D. Ohio July 10, 2017) (citing *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7 (2009)).  The insurance contract between Mr. Urbassik and American Family does not provide for recovery of attorneys' fees in the event of litigation between the insurer and the insured.  (ECF No. 36-1.)  And Plaintiff has not requested fees under any State statute.  Therefore, Plaintiff cannot rely on these costs to save his breach of contract claim.

*Prejudgment Interest.*  Plaintiff also claims an entitlement to prejudgment interest that he argues states a claim for breach of contract.  Under Ohio law, litigants have a right to interest on money when it becomes due and payable on any contract.  Specifically, Section 1343.03(A) of the Ohio Revised Code provides:  "when money becomes due and payable upon any . . . instrument of writing . . . , the creditor is

14

entitled to interest" at a specified rate.  Under the statute, "interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment." *Desai v. Geico Cas. Co.*, 574 F. Supp. 3d 507, 521 (N.D. Ohio 2021) (citation omitted); *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117, 652 N.E.2d 687 (1995)).

Plaintiff argues that Defendant was obligated to pay him the actual cash value of his vehicle in 2017, but failed to do so and owes prejudgment interest on the difference between the allegedly deficient 2017 payment ($6,853.00 ) and the amount payable as determined by the appraisal process in 2022 ($8,793.91).  He argues that this satisfies the third and fourth elements of his breach of contract claim—breach by Defendant and damages.  (ECF No. 39, PageID #608–09.)  Again, the facts alleged, construed in Plaintiff's favor, fail to state a claim.  Plaintiff did not invoke his right to an appraisal.  Any delay in the determination of the value of Mr. Urbassik's vehicle under the policy results from Plaintiff's resistance of an appraisal.  In any event, because Defendant paid Plaintiff the amount payable under the policy, there is no longer a dispute.

Finally, Plaintiff argues that he can continue to prosecute his breach of contract claim because he seeks to represent a putative class.  (ECF No. 39, PageID #609.)  This argument misses the mark.  "Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016).  A class representative must demonstrate "individual standing vis-à-vis the

15

defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). Therefore, Plaintiff may not pursue his claim for breach of contract merely because he seeks to do so on behalf of a class.

### I.C.  Duty of Good Faith and Fair Dealing

Under Ohio law, every contract includes an implied covenant of good faith and fair dealing. *Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017). However, there is no cause of action for breach of the implied duty of good faith and fair dealing where there is no breach of the underlying contract. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453, 2018-Ohio-15, 97 N.E.2d 458, ¶¶ 43–44. Because the Court dismisses Plaintiff's underlying breach of contract claim, the Court dismisses his claim for breach of the covenant of good faith and fair dealing.

## II.  Declaratory Judgment

Plaintiff seeks a declaration that Defendant breached its insurance contract and violated Ohio law by applying AudaExplore's selling price adjustment to total loss claims. (ECF No. 36, ¶ 74, PageID #461–62.) The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as the controversy is within the court's jurisdiction. 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

16

Plaintiff's claim for a declaratory judgment is derivative of his claims for breach of contract and breach of the covenant of good faith and fair dealing. Because Plaintiff's first and second causes of action do not survive a motion to dismiss, neither does his claim for a declaratory judgment.

To argue that his declaratory judgment claim survives a motion to dismiss, Plaintiff points to *Chadwick v. State Farm Mutual Auto. Ins. Co.*, No. 4:21-cv-1161, 2022 U.S. Dist. LEXIS 117926 (E.D. Ark. July 5, 2022). (ECF No. 39, PageID #611– 12.) There, however, the plaintiff's breach of contract claim survived dismissal because there had been no appraisal. *Chadwick*, 2022 U.S. Dist. LEXIS 117926, at *2. And with respect to the declaratory judgment claim, the court explained "[i]t is probably belt and suspenders over the contract claim. But [plaintiff] has standing to bring it. And there's no harm in leaving this request for relief in for now." *Id.* at *3. Because the Court dismisses Plaintiff's breach of contract claim and he seeks only retrospective relief, his declaratory judgment count fares no differently than his others on this record.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's complaint.

**SO ORDERED.**

Dated:  February 23, 2023

_____
     J. Philip Calabrese
     United States District Judge
     Northern District of Ohio